**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF SOUTH CAROLINA**


BRANDON LEANDRE BROWN, )
        #286326, )
                   )    CIVIL ACTION NO. 9:09-2254-JFA-BM
            Petitioner, )
                   )
v. )
                   )    **REPORT AND RECOMMENDATION**
LEROY CARTLEDGE, WARDEN, )
CORRECTIONAL INSTITUTION, )
                   )
           Respondent. )
_____ )


        This is a <u>pro se</u> Petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254

on August 21, 2009.[1]  The Respondent filed a return and motion for summary judgment on January

11, 2010. As the Petitioner is proceeding <u>pro se</u>, a <u>Roseboro</u> order was entered by the Court on

January 12, 2010, advising Petitioner of the importance of a motion for summary judgment and of

the necessity for him to file an adequate response. Petitioner was specifically advised that if he failed

to respond adequately, the Respondent's motion may be granted, thereby ending his case.

        After receiving an extension of time to respond, Petitioner filed a memorandum in

opposition to the motion for summary judgment on February 22, 2010.   This matter is now before

the Court for disposition.[2]

---

    [1]Filing date under <u>Houston v. Lack</u>, 487 U.S. 266 (1988).

    [2]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(c)and (e), D.S.C.  The Respondent has filed a motion for summary judgment.  As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.



**<u>Procedural History</u>**

Petitioner was indicted in January 2002 for criminal sexual conduct with a minor, first degree, and transmitting a sexual disease [Indictment No. 02-GS-21-23] (R.pp. 640-641, 652-653). Petitioner was represented on these charges by Stephen L. Hill, Esquire, and after a trial by jury on August 6-8, 2002, was found guilty as charged. (R.pp. 1-638). The trial judge sentenced the Petitioner to twenty-five (25) years for CSC and thirty (30) days, concurrent, for transmitting a sexual disease. (R.p. 632-635).

Petitioner's trial counsel filed a timely appeal on behalf of the Petitioner. (R.pp. 656-657). Petitioner was represented on appeal by Wanda H. Haile, Senior Assistant Appellate Defender, who raised the following direct appeal issues:

> 1. The lower court erred in denying appellant's motion for a directed verdict of acquittal on the charge of transmitting a sexual disease.
>
> 2. The lower court erred in denying appellant's motion to suppress the second statement given to police because <u>Miranda</u> warnings were not repeated to him at that time.

<u>See</u> Brief, p. 3.

On June 4, 2004, the South Carolina Court of Appeals affirmed Petitioner's convictions and sentences. <u>See</u> <u>State v. Brown</u>, No. 2004-UP-358 (S.C.Ct.App. filed June 4, 2004). (R.pp. 659-661). The Remittitur was issued on June 22, 2004. (R.p. 662). The Petitioner did not seek rehearing and did not seek certiorari in the South Carolina Supreme Court.

Petitioner then filed an Application for Post-Conviction Relief ("APCR") in state circuit court on May 17, 2005; <u>Brown v. State of South Carolina</u>, 05-CP-21-811 (R.pp. 663-672); in which he raised the following issues:

1. Ineffective assistance of counsel in that counsel:



a. Failed to suppress the medical report of Dr. Hyman;

b. Deprived Applicant of his constitutional right to confront adverse witness Sandra Sturkie, the forensic interviewer;

c. Failed to object to the prosecutor's improper closing statement in which he injected his own personal belief and opinion, and

d. Failed to object to hearsay testimony.

(R.pp. 670-671).

Petitioner was represented in his APCR by W. James Hoffmeyer, Esquire, who filed an amended application on December 15, 2006 raising the following additional issues:

I. A juror knew the mother of the victim and was on the jury panel of twelve. This was made known to the Solicitor and Defense counsel, as well as the Court. Defense counsel could have used one of his strikes to strike the juror or request that she be removed for cause if the information was available earlier. Therefore, it should have been requested that an alternate be seated or a mistrial be had.

II. There was no objection to five transcribed statements which were adverse to the Defendant coming into evidence.

III. Defense counsel did not get a ruling from the Court regarding whether the second statement was freely and voluntarily entered into. An objection should have been made and ruled upon related to the fact that <u>Miranda</u> warnings were not given to the Defendant prior to the second statement and, further, that the statement was not knowingly and voluntarily made.

IV. In the Court's charge, the Court indicates in a very general fashion that the jury has to determine whether the statements were freely and voluntarily given by the Defendant, but does not give a correct charge in that the charge leaves out what the jury should consider in determining the voluntariness of the statement.

V. There was a failure to object regarding the Solicitor's remarks to the jury that the child was reacting as "Somebody rescue me. Somebody save me."

(R.pp. 678-679).

An evidentiary hearing was held on February 13, 2007, at which Petitioner was present and represented by Hoffmeyer. (R.pp. 682-729). During the hearing, counsel argued about whether



3

the Solicitor improperly urged the jury to be an advocate for the victim (also known as a "Golden Rule" argument). (R.pp. 687-704). At the conclusion of the hearing, the PCR judge orally granted relief on the "Golden Rule" claim; (R.pp. 726-727); and then entered a written order on March 13, 2007, denying all issues raised except for the issue concerning the Golden Rule. (R.pp. 731-738). With regard to the issue concerning the Golden Rule, the Court granted the petition, finding that trial counsel was ineffective in failing to object to the solicitor's comments in closing argument because the comments encouraged the jury to depart from neutrality and decide the case based on passion and bias rather than on the evidence. (R.pp. 733, 736-738).

The State timely filed a notice of appeal and raised the following issue:

> Did the PCR court err in granting relief to the Respondent when trial counsel was not ineffective in failing to object to the solicitor's closing argument, but if he was ineffective, no prejudice arose?

See Petition, p. 1.

Petitioner was represented on appeal by Wanda H. Carter, Deputy Chief Appellate Defender with the South Carolina Division of Appellate Defense, who filed a response, but did not appeal any of the issues which were denied by the PCR judge. See Brief dated May 7, 2008. On July 27, 2009, the Supreme Court of South Carolina reversed the PCR Judge's decision, finding that while counsel's performance was deficient, there was no showing of the necessary prejudice. See Brown v. State, 680 S.E.2d 909 (S.C. 2009). The Remittitur was issued on August 12, 2009.

In his Petition for writ of habeas corpus filed in this United States District Court, Petitioner raises the following claims:

> **Ground One**: Ineffective Assistance of Trial Counsel for failing to object upon Solicitor's Prejudicial "child-advocate" comment to jury in closing argument.
>
> A. Where the state PCR court correctly found state's evidence not overwhelming,



and trial counsel was ineffective in failing to object upon Solicitor's act of asking the jury to "speak up for [victim]" in closing argument, the S.C. Supreme Court erred in finding trial counsel was not ineffective by reversing grant of PCR relief.

<u>See</u> Petition p. 5.

## **Discussion**

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), Fed.R.Civ.P; <u>see</u> Habeas Corpus Rules 5-7, 11. Further, while the federal court is charged with liberally construing pleadings filed by a <u>pro se</u> litigant to allow the development of a potentially meritorious case; <u>See</u> <u>Cruz v. Beto</u>, 405 U.S. 319 (1972), and <u>Haines v. Kerner</u>, 404 U.S. 519 (1972); the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. <u>Weller v. Dep't of Social Services</u>, 901 F.2d 387 (4th Cir. 1990).

Petitioner contends that his trial counsel was ineffective for failing to object to the Solicitor's "child advocate" comments during his closing argument. The South Carolina Supreme Court reversed the PCR court's granting of relief on this issue, although it did find that trial counsel's performance was deficient, as follows:

[W]e find the PCR judge correctly concluded the solicitor's remarks were improper in that they amounted to an impermissible "Golden Rule" type argument. See <u>State v. Reese</u>, 359 S.C. 260,271, 597 S.E.2d 169, 175 (Ct.App. 2004) (recognizing that a "Golden Rule"argument which suggests to jurors to put themselves in the shoes of one of the parties is generally impermissible because it encourages the jurors to depart from neutrality and to decide the case on the basis of personal interest and bias rather than evidence), aff'd in part and rev'd in part, 370 S.C. 31, 633 S.E.2d 898 (2006)(affirming the Court of Appeals' finding that the defendant was entitled to a



5

new trial based on the solicitor's "Golden Rule" closing argument in which he repeatedly asked jurors to "speak" for the murdered victim).

Here, it is indisputable that the case was "emotionally charged" given it involved sexual misconduct with a three-year-old child. Thus, the solicitor's remarks imploring the jurors to "speak for" the victim undeniably asked the jurors to set aside their impartiality and, instead, consider the evidence from the subjective position of the child victim.

In view of this improper argument, we agree with the PCR judge that it was incumbent upon Brown's trial counsel to object to the solicitor's closing remarks. Furthermore, although we do not believe trial counsel was disingenuous in articulating a trial strategy to explain his failure to object to these comments, we find this "strategy" cannot be construed as a valid one given the evident impropriety of the solicitor's remarks. [Citations ommitted].

Based on the foregoing, we hold trial counsel was deficient in failing to object to the challenged portion of the solicitor's closing argument because it constituted a "Golden Rule" argument which impermissibly appealed to the passion of the jurors by asking them to "speak up" for the child victim.

See Brown, 680 S.E.2d at 915.

However, the State Supreme Court nevertheless denied relief, finding that the Petitioner "did not satisfy his requisite burden of proving that there was a reasonable probability that but for counsel's deficient performance the result of his trial would have been different." Id. In reading this conclusion, the South Carolina Supreme Court found that: 1) the solicitor's comments came at the very end of his closing argument and were limited in duration; 2) the solicitor's comments did not so infect the trial with unfairness as to make the resulting conviction a denial of due process; 3) there was overwhelming evidence of Petitioner's guilt; 4) the State presented four eyewitnesses who testified to seeing Petitioner commit the sexual misconduct against the child; 5) each of the witnesses testified they could see into the child's bedroom window because the blinds were wide open, it was dark outside, and there was a light on in the bedroom; 6) they further explained that they were able to see more clearly when they approached the window to confront



6

Petitioner by banging on the bedroom window; 7) each witness testified that when the Petitioner opened the door, he had an erection; 8) although Petitioner's trial counsel attempted to establish that the witnesses' testimony differed from their written statements regarding certain details, the witnesses were adamant that they could see through the child's bedroom window; 9) these witnesses also explained that they wrote their statements for the police immediately after witnessing the incident while sitting in the dark on top of the police cars; 10) the State also presented the two audio-taped statements given by Petitioner in which he admitted to "accidental" or "possible" penetration of the child; 11) Petitioner's ex-wife also testified that when she spoke with Petitioner at the police station he admitted that he had been playing with the child and said, "my penis may have fallen out of my boxers; and I may have gotten erected; and her panties may have gone to the side"; 12) the State's expert witness testified that the child exhibited physical and psychological symptoms which were indicative of sexual abuse; 13) this expert witness also confirmed that the child had been diagnosed with gonorrhea; 14) although the defense presented evidence that Petitioner may not have been contagious on the day of the incident, there was testimony that prior to the incident he was diagnosed with gonorrhea and had access to the child alone during the day; 15) the jury only deliberated for thirty-eight minutes before finding the Petitioner guilty on both charges; 16) the trial judge also acknowledged the overwhelming evidence of guilt during sentencing; 17) any impropriety in the solicitor's closing argument was not sufficient to warrant the PCR judge's decision to grant a new trial; and 18) although the PCR court was correct in determining that trial counsel's performance was deficient in failing to object to the Solicitor's "Golden Rule" closing argument, Petitioner failed to prove that there was a reasonable probability that but for this error the result of his trial would have been different. See Brown, 680 S.E.2d at 915.



Substantial deference is to be given to the state court's findings of fact.  Evans v. Smith, 220 F.3d 306, 311-312 (4th Cir. 2000), cert. denied, 532 U.S. 925 (2001) ["We . . . accord state court factual findings a presumption of correctness that can be rebutted only by clear and convincing evidence], cert. denied, 532 U.S. 925 (2001); Bell v. Jarvis, 236 F.3d 149 (4th Cir. 2000)(en banc), cert. denied, 112 S.Ct. 74 (2001).

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1).  See also Fisher v. Lee, 215 F.3d 438, 446 (4th Cir. 2000), cert. denied, 531 U.S. 1095 (2001); Frye v. Lee, 235 F.3d 897, 900 (4th Cir. 2000), cert. denied, 533 U.S. 960 (2001).

However, although the state court findings as to historical facts are presumed correct under 28 U.S.C. § 2254(e)(1), where the ultimate issue is a mixed question of law and fact, as is the issue of ineffective assistance of counsel, a federal court must reach an independent conclusion. Strickland v. Washington, 466 U.S. 668, 698 (1984); Pruett v. Thompson, 996 F.2d. 1560, 1568 (4th Cir. 1993), cert. denied, 114 S.Ct. 487 (1993) (citing Clozza v. Murray, 913 F.2d. 1092, 1100 (4th Cir. 1990), cert. denied, 499 U.S. 913 (1991)).  Nevertheless, since Petitioner's ineffective assistance of counsel claims were adjudicated on the merits by the South Carolina state court, this Court's review is limited by the deferential standard of review set forth in 28 U.S.C. §2254(d), as interpreted by the Supreme Court in Williams v. Taylor, 120 S.Ct. 1495 (2000).  See Bell v. Jarvis, supra; see also Evans, 220 F.3d at 312 [Under § 2254(d)(1) and (2), federal habeas relief will be granted with respect to a claim adjudicated on the merits in state court proceedings only where such adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States", or "resulted in

8



a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding"]. Therefore, this Court must be mindful of this deferential standard of review in considering Petitioner's ineffective assistance of counsel claim.

Where allegations of ineffective assistance of counsel are made, the question becomes "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, 466 U.S. at 694. In Strickland, the Supreme Court articulated a two prong test to use in determining whether counsel was constitutionally ineffective. First, the Petitioner must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel's performance was below the objective standard of reasonableness guaranteed by the Sixth Amendment. Second, the Petitioner must show that counsel's deficient performance prejudiced the defense such that the Petitioner was deprived of a fair trial. In order to show prejudice a Defendant must show that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. Mazzell v. Evatt, 88 F.3d 263, 269 (4th Cir. 1996). Petitioner has failed to meet his burden of showing that his counsel was ineffective under this standard. Smith v. North Carolina, 528 F.2d 807, 809 (4th Cir. 1975) [Petitioner bears the burden of proving his allegations when seeking a writ of habeas corpus].

The record reflects that in the Solicitor's closing argument at Petitioner's trial, he described the victim clinging to one of the witnesses as "somebody rescue me; somebody save me." (R.p. 592). The Solicitor later stated:

> I embrace my burden because I represent the State of South Carolina. And I think that someone said at the beginning of this trial this is trying to protect the rights of people. Well, I tell you what. I'm here to protect the innocent. I'm here to protect ----- a four-year-old child now. Three-year old little child at that time. And I am the last



9

person that you're going to hear speak up for her.

So I ask you, when you go back in that jury room, you speak up for -----.  We can never put her back to where she was before this abuse occurred.  But we can make sure that the perpetrator is punished.  So when you go back in that jury room to deliberate, ladies and gentlemen, speak up for -----.

(R.p. 594).

"In a Golden Rule argument, jurors are urged to place themselves in the position of a party, a victim, or a victim's family member and decide the case from that perspective." Gilchrist v. Hagan, No. 06-1236, 2007 WL 951749 at * 29 (D.S.C. Mar. 27, 2007)(citing Von Dohlen v. State, 602 S.E.2d 738, 743-744 (S.C. 2004)). Based on the Solicitor's argument and the applicable caselaw, the undersigned does not find that South Carolina Supreme Court's conclusion that this argument was improper and that counsel was deficient for not objecting to these remarks to be unreasonable.  Evans, 220 F.3d at 312.  While Petitioner's counsel testified at the PCR hearing that he did not object because, based on the gravity of the evidence against the Petitioner, he did not want to exacerbate a bad set of facts by pointing out to the jury this objection; (R.pp. 720-721); the State Court's rejection of this trial strategy is not reversible error.  Brown, 680 S.E.2d at 915; cf. Stokes v. State, 419 S.E.2d 778, 779 (S.C. 1992)[Counsel may be found to be ineffective absent valid reason for trial strategy employed].

However, "[t]he law is clear that although it is improper to ask jurors to place themselves in the position of a party, such a 'golden rule' argument does not constitute reversible error if no prejudice arise[s] from counsel's comment." Ladantae v. Koppel, No. 07-2176, 2010 WL 2025586 at *13 (D.Md. May 19, 2010) (citing Insurance Co. of North America v. U. S. Gypsum Co., 870 F.2d 148, 154 (4th Cir. 1989).  Here, four of Petitioner's neighbors testified that they saw the Petitioner "humping" the victim.  (R.pp. 143-146, 149-150, 172-173, 175-190, 198-208, 217-218). The Petitioner's ex-wife and victim's mother, Rhonda Turner, testified that she had contracted



gonorrhea from the Petitioner while she was pregnant with their child, and that after the incident involving the Petitioner and the victim, Turner was informed that the victim had gonorrhea and received a shot for treatment. (R.pp. 262-265, 271). A pediatric nurse, Kathy Saunders, also examined the victim and testified that the victim had symptoms of gonorrhea, which is only spread through sexual contact. (R.pp. 288-296). Turner also testified that Petitioner told her, "I may have, you know, been playing with her; and my penis may have fallen out of my boxers; and I may have gotten erected; and her panties may have gone to the side."; (R.pp. 271-272); while Saunders testified that the presence of gonorrhea and the inflamation of the victim's vagina was consistent with sexual abuse occurring on August 4, and that the victim also displayed other symptoms of sexual abuse, including bed wetting, stomach pains, and nightmares. (R.pp. 296-298, 307, 318-325).

Additionally, a few hours after the incident was reported Petitioner gave two statements to the police, stating that he may have gotten too close to the victim, that he was on top of the victim wrestling with her, that he got an erection, that he got aroused, that he pushed but did not go in and penetrate her, that he was moving back and forth, that he had to put his penis back inside his boxers, and that his penis may have hit the victim a couple of times. (R.pp. 367, 371-383). The trial court then charged the jury with the law and the standard for considering this case. (R.pp. 594-615).

The state court's decision finding no prejudice based on the overwhelming evidence of guilt and denying Petitioner's claim is entitled to deference, and Petitioner has failed to satisfy his burden to show prejudice under <u>Strickland</u>. Although Petitioner speculates that the outcome may have been different if his counsel had objected, he has produced no evidence to support his assertions, nor has be shown that an objection by counsel to the Solicitor's remarks in his closing argument



would have affected the outcome in this case.  Cf. Green v. State of South Carolina, 569 S.E.2d 318, 324 (S.C. 2002)[Speculation as to whether a juror wished to convict not sufficient to warrant relief]; Bradford v. Whitley, 953 F.2d 1008, 1012 (5th Cir. 1989)[Speculation and conjecture does not satisfy the prejudice prong of Strickland].  Accordingly, Petitioner has failed to show that the state court's rejection of this claim was unreasonable.  Evans, 220 F.3d at 312 [Federal habeas relief will not be granted on a claim adjudicated on the merits by the state court unless it resulted in a decision that was based on an unreasonable determination of the law or facts in light of the evidence presented in the state court proceeding]; Williams v. Taylor, supra.  Bell, 236 F.3d at 157-158; 28 U.S.C. § 2254(e)(1) [Determination of a factual issue by the state court shall be presumed correct unless rebutted by clear and convincing evidence].

This claim should be dismissed.

## Conclusion

Based on the foregoing, it is recommended that the Respondent's motion for summary judgment be **granted**, and that this Petition be **dismissed**.

The parties are referred to the Notice Page attached hereto.

_____

Bristow Marchant
United States Magistrate Judge

June 9, 2010
Charleston, South Carolina



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

